1 Eric Slocum Sparks
  Arizona State Bar No. 11726
2 LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
  110 South Church Avenue #2270
3 Tucson, Arizona  85701
  Telephone (520) 623-8330
4 Facsimile (520) 623-9157
  law@ericslocumsparkspc.com
5 eric@ericslocumsparkspc.com

6 Attorney for Debtors

7                    IN THE UNITED STATES BANKRUPTCY COURT

8                        FOR THE DISTRICT OF ARIZONA

9 In re:                                    )
                                            )
10                                          )
   ARTHUR L FLAGG and                       )    No.  4:13-bk-14800-EWH
11 ANITA L FLAGG,                           )
                                            )
12                                          )    (Chapter 11)
              Debtors.                      )
13                                          )    DEBTORS' FIRST PLAN OF
                                            )    REORGANIZATION DATED
14                                          )    December 24, 2013
   _____)
15
16        Arthur L Flagg and Anita L Flagg, (hereinafter "Debtors"), hereby submit this Plan of

17 Reorganization in accordance with 11 U.S.C. §1121(a).

   **I. DEFINITIONS**
18
19        As utilized in this Plan of Reorganization (hereinafter "Plan") and in the Disclosure Statement

20 (hereinafter "Disclosure Statement") which accompanies this Plan of Reorganization, the following

   definitions apply to the following terms:
21
22        1. "Adequate Information" means information that would enable a hypothetical reasonable

23 investor typical of holders of claims or interest of the Debtor's estate, to make an informed judgment

   about the Debtor's Plan of Reorganization.
24
25        2. "Administrative Claim" will refer to and mean every cost or expense of administration of the

26 reorganization case allowed under Bankruptcy Code §503(b) and referred to in Bankruptcy Code

27 §507(a)(1), including without limitation: (a) any actual and necessary expense of preserving the estate

28 as approved the Bankruptcy Court; (b) all allowances, including professional fees and costs approved

                                            1

by the Bankruptcy Court; (c) any actual and necessary expenses incurred in the operation of the Debtor's business; and (d) all fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United Stated Code.

3. "<u>Affiliate</u>" shall mean any affiliate that is defined in Section 101(2) of the Bankruptcy Code.

4. "<u>Allowed Claim</u>" shall mean (a) a claim off a person which has been scheduled by the Debtor as undisputed, and as to which claim no objection has been made by any other person within the time allowed for the making of objections; (b) a claim allowed by a final order; (c) a claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment, no objection has been made within the time allowed for the making of objections; or (d) a claim allowed under the Plan, notwithstanding any objection filed thereto by an person. Interest accrued after the filing date of the Debtor's reorganization case shall not be a part of any allowed claim against such Debtor, except as required or permitted by law.

5. "<u>Allowed Amount</u>" shall mean with respect to any allowed claim in a particular class under the Plan, the amount of such claims in such class.

6. "<u>Allowed Interest</u>" or "<u>Allowed Equity Interest</u>" shall mean (a) an equity interest in the Debtor held by a person as of the Effective Date, and as to which interest no objection has been made by any other person within the time allowed for the making of objections; (b) an interest allowed by a final order; (c) an interest as to which a timely and proper proof of claim or application for payment no objection has been made within the time allowed for the making of objections or (d) an interest allowed under the Plan, notwithstanding any objection filed thereto by any person.

7. "<u>Assets</u>" shall mean, with respect to the Debtor, all rights, causes of action, all of the right, title and interest in and to property (real or personal, tangible or intangible) or whatsoever type or nature, owned by such Debtor as of the Effective Date, together with assets subsequently acquired by such Debtor, and including, but not limited to, property as defined in Section 541 of the Bankruptcy Code (each identified item of property being herein sometimes referred to as an asset).

8. "<u>Ballot</u>" will refer to and mean the ballot for accepting or rejecting the Plan which will be distributed to holders of claims and classes that are impaired under this Plan are entitled to vote on this

2

Plan.

9. "<u>Bankruptcy Code</u>" will refer to and mean Title 11 of the United States Code 11 U.S.C. §101, <u>et seq.</u>, as the same may be amended from time to time.

10. "<u>Bankruptcy Court or Court</u>" will refer to and mean the United States Bankruptcy Court for the District of Arizona, or such other court that exercises jurisdiction over all or part of the reorganization case, including the United States District Court for the District of Arizona, to the extent the reference of all or part of this reorganization case is withdrawn.

11. "<u>Bankruptcy Rules</u>" will refer to and mean the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. §2075 and the local rules of the Court, as applicable from time to time during the reorganization case.

12. "<u>Business Day</u>" will refer to and mean any day other than a Saturday, Sunday, or federal holiday recognized by the Federal Courts for the District of Arizona, and Arizona State holidays recognized by the Federal Courts for the District of Arizona.

13. "<u>Case</u>" shall mean the Chapter 11 case commenced by the filing with the Court of a voluntary petition for relief under Chapter 11 of the Code by the Debtor.

14. "<u>Cash</u>" will refer to and mean cash, cash equivalents, bank deposits, and negotiable instruments.

15. "<u>Chapter 11</u>" shall mean Chapter 11 of the Code, 11 U.S.C. Section 1101-46.

16. "<u>Claim</u>" will refer to and mean every right and remedy encompassed within the statutory definition set forth in Bankruptcy Code §101(4), 11 U.S.C. §101(4), whether or not such claim is asserted.

17. "<u>Class</u>" will refer to and mean each of the categories of claims and interests described in Article II of this Plan.

18. "<u>Confirmation Date</u>" will refer to and mean the date on which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

19. "<u>Confirmation Hearing</u>" will refer to and mean the hearing regarding the confirmation of this Plan conducted pursuant to Bankruptcy Code §1128, as adjourned or continued from time to time.

3

20. "Confirmation Order" will refer to and mean the order confirming this Plan pursuant to Bankruptcy Code §1129.

21. "Court" shall mean the United States Bankruptcy Court for the District of Arizona, Tucson Division.

22. "Creditor" will refer to and mean every holder of a claim whether or not such claim is an allowed claim, encompassed within the statutory definition set forth in Bankruptcy Code §101(9), 11 U.S.C. §101(9).

23. "Debtor" will refer to and mean Arthur L. Flagg and Anita L. Flagg, in the capacities as the Debtors and Debtors-In-Possession in the reorganization case with the status and rights conferred by U.S.C. Section 1107.

24. "Deficiency Claim" shall mean an allowed claim of a creditor, if any, equal to the amount by which the aggregate allowed claims of such creditor exceed the sum of (a) any setoff rights of the creditor permitted under Section 553 of the Bankruptcy Code rights of the creditor permitted under Section 553 of the Bankruptcy Code plus (b) the secured claim of such creditor; provided however, that if the holder of a secured claim of the class of which such claim is a member makes the election provided in Section 1111(b)(2) of the Bankruptcy Code, there shall be no deficiency claim in respect of such claim.

25. "Disclosure Statement" will refer to and mean the written statement describing this Plan which is prepared by the Debtor and distributed in accordance with Bankruptcy Code §§1125, 1126(b), and 1145 and Bankruptcy Rule 3018, as amended, in its present form or as the same may be altered, amended, or modified by the Debtor.

26. "Disputed Claim or Disputed Interests" will refer to and mean every claim; (a) that is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) proof of which has been filed with the Bankruptcy Court and an objection to the allowance thereof, in whole or in part, has been interposed prior to the final date provided under this Plan for the filing of such objections or such other time as provided by the Bankruptcy Court and which objection has not been withdrawn, settled or determined by the final order.

4

27. "<u>Disposable Income</u>" that amount of income to be contributed by debtors for a period of 60 months and paid to creditors on there allowed claims on a pro rata basis as a full and final settlement. The amount of disposable income will be reduced by any allowed administrative fees allowed by this Court.

28. "<u>Effect of Discharge</u>" 11 U.S.C. 1141 d(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan- (A) Discharges the debtor from any debts that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(I) of this title. (2) A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title.

29. "<u>Effective Date</u>" shall mean the later of (a) the first business day following the **<u>60th</u>** day after entry of the Court of an order confirming this Plan, or (b) the first business day after such order has become final and unappealable; provided however, no appeal of said order is pending; provided further, the Debtor may waive the condition that no appeal of the order of confirmation be pending by a writing duly executed by the Debtor and filed with the Court on or before the date which but for the pendency of appeal would become the Effective Date of the Plan, and in the event that said condition is timely waived by the Debtor, the Plan shall become effective as provided herein notwithstanding the pendency on said date of an appeal or appeals; in the event that said condition is not timely waived, the Plan shall become effective on the first business day after an appeal is no longer pending.

30. "<u>Final Order</u>" shall mean an order of judgment of the Bankruptcy Court which (a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, or rehearing or certiorari is pending; or (b) if appealed from, shall have been affirmed and no further hearing, appeal or petition for certiorari can be taken or granted, or as to which no stay has been entered to affect the operative provisions of such order of judgment.

31. "<u>Insider</u>" shall refer to and mean all persons who qualify as an "insider" pursuant to 11 U.S.C. §101(31).

32. "<u>Interest</u>" shall mean any equity interest in the Debtor as of the petition date.

5

33. "Interest Holder(s)" shall mean any person or persons owning an equity interest in the Debtor as of the Effective Date.

34. "Person" will refer to and mean any individual, corporation, limited or general partnership, joint venture, association, joint stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof.

35. "Petition Date" shall mean the date that the Debtor filed the voluntary petition under Chapter 11 of the Bankruptcy Code with this Court.

36. "Plan" shall mean this Plan of Reorganization as set forth herein, in its entirety, and all addenda, exhibits, schedules, releases, and other attachments thereto as may be amended or supplemented from time to time.

37. "Preference Recovery Amounts" shall mean all sums collected as preferences under §547 of the Code and as set-offs under §553 of the Code.

38. "Professional Persons" means persons retained or to be compensated pursuant to §§327, 328, 330 and 503(b) of the Code.

39. "The Property" means the personal and real property of the debtor.

40. "Proponent" shall mean the Debtor.

41. "Secured Claim" shall mean (a) a claim secured by a lien on property of the Debtor, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in such Debtor's reorganization case, but only to the extent that such claim does not exceed the value of such Debtor's assets which the Bankruptcy Court finds are valid security for such claim (except, if the class of which such claim is a part makes the election provided in Section 1111(b)(2) of the Bankruptcy Code, the entire amount of the claim shall be a secured claim and (b) a claim allowed under the Plan as a secured claim.

42. "Secured Creditors" means persons holding allowed secured claims within the meaning of Section 506 of the Code.

43. "Tax Claims" shall mean the claims of any person for the payment of taxes (a) accorded a

6

priority pursuant to Section 507(a)(1) and (7) of the Bankruptcy Code, but excluding all claims for post-petition interest and pre-petition and post-petition penalties, all of which interest and penalties shall be deemed disallowed and discharged on the Effective Date.

44. "Taxing Authorities" shall mean any legal entity with authority to levy and collect taxes pursuant to federal, state or local statutes or ordinances.

45. "Unsecured Claims" shall mean all claims held by creditors of the Debtor, including deficiency claims, dissolution claims and claims arising out of the rejection of executory contracts, other than secured claims, administrative claims and tax claims.

46. "Unsecured Creditors" shall mean persons holding allowed unsecured claims against the Debtor for which there are no assets of the Debtor serving as security (excluding undersecured mortgage deficiency creditors), but not including priority claims.

17. All other terms not specifically defined by this Disclosure Statement shall have the meaning as designated in §101 of the Bankruptcy Code or, if not contained therein, their ordinary meaning.

## II. CLASSES OF CLAIMS

Administrative Claims.

These claims consist of the expenses of administration of the estate including attorney's fees for Debtors' counsel and any unpaid fees to the U.S. Trustee. The Debtors estimate these costs and expenses may be in excess of $30,000.00.

Tax Claims.

As reflected in the original schedules filed by the Debtors, Debtors estimated tax claims in the amount of $0.00. This does not include any amounts that may be due for ad valorem claims which are secured against real property, if any.

Secured Claims.

As reflected in the original schedules filed by the Debtors, Debtors estimated secured claims in the amount of $4,175,888.00.

Unsecured Claims.

As reflected in the schedules filed by the Debtors, Debtors estimated unsecured claims in the

7

amount of $39,553.09 which does not include any deficiency amounts for secured creditors.

Domestic Support Claims.

As reflected in the schedules filed by the Debtors, there are no support orders against the Debtors.

### III. TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

Classes 1, 4 and 23 are not impaired under the Plan in that the Plan does not alter the legal or contractual rights to which the holders of such claims are entitled and/or the Bankruptcy Code permits payment over an extended period of time and/or the holder of the claim has agreed to a different treatment.

### IV. TREATMENT OF IMPAIRED CLAIMS UNDER THE PLAN

Classes 2, 3, 5, through 22 are impaired under the Plan in that the Plan does alter the legal or contractual rights to which the holders of such claims are entitled and/or the Bankruptcy Code permits payments over an extended period of time and/or the holder of the claims has agreed to a different treatment.

### V. CLASSES OF CLAIMS

*Classification and Treatment of Claims and Interests*

1. *Claim Amounts*: Because certain claims against the Debtor may be unknown or of undetermined amounts, the amounts of claims specified in this Disclosure Statement reflect only the Debtor's best estimate at this time of the amount due. In addition, the amounts of the claims specified in this Disclosure Statement do not include, for example, claims arising from the rejection of certain executory contracts and other contingent or unliquidated claims arising against the debtor.

2. *Effective Date of the Plan*: The "Effective Date" of the Plan is important in determining when performance of many of the Debtor's obligations under the Plan is due. The Effective Date is defined in the Plan as the first business day following the later of the following day;

(I) the date on which the Order confirming the Plan (the "Confirmation Order") becomes final and non-appealable with no appeal then pending.

3. *Classification*: The Plan divides claims against the Debtor, into multiple separate classes that the Debtor asserts are in accordance with the Bankruptcy Code. Unless otherwise expressly stated

8

in the Plan, distributions to holders of allowed claims are in full satisfaction of their allowed claims. All claims against the Debtor arising prior to confirmation will be discharged by performance of the Plan on the Effective Date to the extent that such claims are dischargeable under the Bankruptcy Code Section 1141(d).

The Plan provides for 23 classes of claims to be paid or administered in the following manner:

5.1 Class 1 - Administrative Claims

These claims are for the expenses of administration of the estate, including attorney fees for Debtors' counsel in the approximate sum of $30,000.00 and unpaid fees to the U.S. Trustee, if any. Debtors believe, at the time that the Debtors' Chapter 11 Plan is confirmed, that there will be an administrative expense claim in the approximate amount of $30,000.00. This claim shall be paid in cash, or in the amounts allowed by the Court upon the Plan distribution date unless otherwise agreed to between the Debtors and the administrative creditor. **(This class is not impaired.)**

5.2 Class 2 - Priority Claims of Governmental Units

A.    Classification: Class 2 claims consists of all allowed claims of the United States Internal Revenue Service ("IRS") and/or State of Arizona, Department of Revenue ("ADOR") and/or the Arizona Department of Economic Security ("ADES"), City of Tucson or other government agency which are entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code except ad valorem taxes.   The IRS has filed a proof of claim in the amount of $656.96.

B.    Impairment: Class 2 is impaired.

C.    Treatment: In the event there are determined to be allowed Class 2 claims, each holder of a Class 2 allowed claim shall retain its claim, in accordance with Section 1129 of the Bankruptcy Code. The claim shall bear simple interest at a fixed rate equal to that rate which would be required to be paid as of the Effective Date under Section 6621 and/or 6622 of the Internal Revenue Code, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax note a value as of the Effective Date equal to the principal amount of such claim. The allowed claim shall be payable in equal monthly installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed five years from the date of petition. The first payment shall

9

commence on the first day of the month immediately following the month of the Effective Date. The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are required by law.

5.3    Class 3 - Secured Ad Valorem Real Property Tax Claims

A.    Classification: Class 3 shall consist of pre-petition allowed Ad Valorem Real Property Tax Claims which are secured by liens on real property.   Pima County has filed claims in the amount of $21,875.53.

B.    Impairment: Class 3 is impaired.

C.    Treatment: In the event there are determined to be allowed Class 3 claims, each holder of a Class 3 allowed claim shall retain its lien  having an aggregate principal amount sufficient to satisfy, in accordance with Section 1129 of the Bankruptcy Code, the allowed claim.  Such claim shall bear simple interest at a statutory rate of 16% per annum required to be paid as of the Effective Date, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax claim a value as of the Effective Date equal to the principal amount of such claim charged by the taxing authority, or the statutory rate of interest.  Payments shall be made in equal monthly  installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed five years from date of petition.  The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are required by law.

5.4    Class 4 - Secured Claim of Compass Bank ("Compass")

A.    Classification:  Class 4 consists of the first lien claim of Compass secured by the real property located at 12360 E. Prince Rd., Tucson, AZ 85749, the Debtors' principal residence. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof  of Claim filed by Compass in the amount of $1,112,231.74.

B.    Impairment: Class 4 is not impaired.

C.    Treatment: Debtors will continue to pay pursuant to the existing mortgage contract. Tax and insurance escrows, if any, will continue to be paid pursuant to the terms of the Note and Deed of Trust. Post-petition arrears, if any, will be paid in sixty (60) equal monthly installments

10

1  beginning 30 days after the Effective Date of the Plan.

2      5.5  Class 5 - Second Lien Claim of Wells FargoBank, N.A. ("Wells Fargo")

3          A.    Classification: This class consists of the allowed second lien claim of Wells Fargo

4  to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property

5  located at 12360 E. Prince Rd., Tucson, AZ 85749, the Debtor's principal residence.  This claim is

6  evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Wells

7  Fargo in the amount of $578,581.07. The Debtors believe the claim is wholly unsecured.

8          B.    Impairment: Class 5 is impaired.

9          C.    Treatment: The Class 5 claimant, which holds a second position lien on the real

10 property, is believed to be wholly unsecured. The Class 5 creditor have its lien released upon Court's

11 order confirming debtor's plan of reorganization. Any deficiency amount shall be treated as a Class 21

12 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

13      5.6    Class 6 - Secured Claim of Wells Fargo Bank N.A. ("Wells Fargo")

14          A.    Classification: Class 6 consists of the first lien claim of Wells Fargo secured by

15 the real property located at 12516 Middle Sabino, Mt. Lemmon, AZ 85719. This claim is evidenced by

16 a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Wells Fargo in the

17 amount of $578,581.07. The Debtors believe the claim is not fully secured.

18          B.    Impairment: Class 6 is impaired.

19          C.    Treatment: Debtor has not recently had the property appraised, but believes the

20  current value of the property is $76,000.00.

21      IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH WELLS

22 FARGO AS TO THE PROPERTIES VALUE, ITS TREATMENT OF THE CLAIM, THE TERMS

23 AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN.

24 Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the

25 creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any,

26 unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully

27 secured. The allowed amount of the creditor's secured claim will be the lesser of value of the creditor's

28

interest in the Debtors' interest in the property as determined under § 506, or the allowed amount of the creditor's claim. Debtor has not recently had the property appraised, but believes the current value of the property is $76,000.00. The Debtors propose to limit the Class 6 creditor's secured claim to $76,000.00 and to treat the balance of its claim, if any, as an unsecured deficiency claim and treat and pay it as a Class 21 unsecured creditor.

The allowed claim of the Class 6 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

1. The allowed secured claim shall accrue interest from the Effective Date of the Plan at the current rate of three and one half percent (3.5 %) per annum as a fixed rate, or the rate on the existing note, whichever is less. The Class 6 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of Wells Fargo's claim.

2. The note shall be payable in equal monthly installments of principal and interest amortized over thirty (30) years. The first monthly installment shall be due thirty (30) days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the thirtieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property or contributions of the owners of the property at the time the final payment is due. Unless modified herein tax and insurance escrows, if any, will continue to be paid pursuant to the terms of the Note and Deed of Trust.

3. The note of the Class 6 creditor shall continue to be secured by its first position deed of trust on the property but the note and any obligation due the Class 6 creditor, which is secured by the above deed of trust, shall be non-recourse to the Debtors. Any security for payment of the allowed claim which Wells Fargo had at the petition date other than the deed of trust above described which encumbers the property Wells Fargo shall retain post-confirmation.

4. The Debtors and the Class 6 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

5. Any difference between current market value and obligation due lender shall be treated as a Class 21 unsecured claim and will be paid on a *pro-rata* basis from Debtors' disposable income.

5.7 Class 7 - Second Lien Claim of Business Development Finance Corporation ("BDFC")

A. Classification: This class consists of the allowed second lien claim of BDFC to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 12516 Middle Sabino, Mt. Lemmon, AZ 85719. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Wells Fargo in the amount of $578,581.07. The Debtors believe the claim is wholly unsecured.

B. Impairment: Class 7 is impaired.

C. Treatment: The Class 7 claimant, which holds a second position lien on the real property, is believed to be wholly unsecured. The Class 7 creditor have its lien released upon Court's order confirming debtor's plan of reorganization. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

5.8 Class 8 - Secured Claim of Wells Fargo Bank N.A. ("Wells Fargo")

A. Classification: Class 8 consists of the first lien claim of Wells Fargo secured by the real property located at 12356 E. Prince Rd., Tucson, AZ 85749. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Wells Fargo in the amount of $264,175.26. The Debtors believe the claim is not fully secured.

B. Impairment: Class 8 is impaired.

C. Treatment: Debtor has not recently had the property appraised, but believes the current value of the property is $55,000.00.

IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH WELLS FARGO AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code, a

13

secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of value of the creditor's interest in the Debtors' interest in the property as determined under § 506, or the allowed amount of the creditor's claim. Debtor has not recently had the property appraised, but believes the current value of the property is $55,000.00. The Debtors propose to limit the Class 8 creditor's secured claim to $55,000.00 and to treat the balance of its claim, if any, as an unsecured deficiency claim and treat and pay it as a Class 21 unsecured creditor.

The allowed claim of the Class 8 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

1. The allowed secured claim shall accrue interest from the Effective Date of the Plan at the current rate of three and one half percent (3.5 %) per annum as a fixed rate, or the rate on the existing note, whichever is less. The Class 8 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of Wells Fargo's claim.

2. The note shall be payable in equal monthly installments of principal and interest amortized over thirty (30) years. The first monthly installment shall be due thirty (30) days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the thirtieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property or contributions of the owners of the property at the time the final payment is due. Unless modified herein tax and insurance escrows, if any, will continue to be paid pursuant to the terms of the Note and Deed of Trust.

3. The note of the Class 8 creditor shall continue to be secured by its first position deed of trust on the property but the note and any obligation due the Class 8 creditor, which is secured by the

14

above deed of trust, shall be non-recourse to the Debtors. Any security for payment of the allowed claim which Wells Fargo had at the petition date other than the deed of trust above described which encumbers the property Wells Fargo shall retain post-confirmation.

4. The Debtors and the Class 8 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

5. Any difference between current market value and obligation due lender shall be treated as a Class 21 unsecured claim and will be paid on a *pro-rata* basis from Debtors' disposable income.

5.9    Class 9 - Secured Claim of Green Tree Servicing, LLC ("Green Tree")

A.    Classification: Class 9 consists of the first lien claim of Green Tree secured by the real property located at 5985 N. Sonoran Sky Place, Tucson, AZ 85750. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Green Tree in the amount of $268,143.00. The Debtors believe the claim is fully secured.

B.    Impairment: Class 9 is impaired.

C.    Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH GREEN TREE AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN.

1. The allowed secured claim shall accrue interest from the Effective Date of the Plan at the current rate of three and one half percent (3.5 %) per annum as a fixed rate, or the rate on the existing note, whichever is less.

2. The note shall be payable in equal monthly installments of principal and interest amortized over thirty (30) years. The first monthly installment shall be due thirty (30) days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the thirtieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property or contributions of the owners of the property at the time the final payment is due. Unless modified herein

15

tax and insurance escrows, if any, will continue to be paid pursuant to the terms of the Note and Deed of Trust.

3. The note of the Class 9 creditor shall continue to be secured by its first position deed of trust on the property but the note and any obligation due the Class 9 creditor, which is secured by the above deed of trust, shall be non-recourse to the Debtors. Any security for payment of the allowed claim which Green Tree had at the petition date other than the deed of trust above described which encumbers the property Green Tree shall retain post-confirmation.

4. The Debtors and the Class 9 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

5.10    Class 10 - Second Lien Claim of Tucson Fcu/lsi ("Tucson Fcu")

This class consists of the allowed second lien claim of Tucson Fcu to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 5985 N. Sonoran Sky Place, Tucson, AZ 85750. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Tucson Fcu in the amount of $76,878.17. The Debtors believe the claim is wholly unsecured.

B.    Impairment: Class 10 is impaired.

C.    Treatment: The Class 10 claimant, which holds a second position lien on the real property, is believed to be wholly unsecured. The Class 10 creditor have its lien released upon Court's order confirming debtor's plan of reorganization. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

5.11    Class 11 - Third Lien Claim of Wells Fargo Bank, N.A. ("Wells Fargo")

This class consists of the allowed third lien claim of Wells Fargo to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 5985 N. Sonoran Sky Place, Tucson, AZ 85750. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Wells Fargo in the amount of $264,175.26. The Debtors believe the claim is wholly unsecured.

16

B.      Impairment: Class 11 is impaired.

C.      Treatment: The Class 11 claimant, which holds a third position lien on the real property, is believed to be wholly unsecured. The Class 11 creditor have its lien released upon Court's order confirming debtor's plan of reorganization. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

5.12      Class 12 - Secured Claim of JPMorgan Chase Bank, N.A. ("Chase")

A.      Classification: Class 12 consists of the first lien claim of Chase secured by the real property located at 7371 E. Placita Del Animo, Tucson, AZ 85715. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Chase in the amount of $140,142.58. The Debtors believe the claim is fully secured.

B.      Impairment: Class 12 is impaired.

C.      Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH CHASE AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERCEDE THE TREATMENT SET FORTH HEREIN.

1. The allowed secured claim shall accrue interest from the Effective Date of the Plan at the current rate of three and one half percent (3.5 %) per annum as a fixed rate, or the rate on the existing note, whichever is less.

2.  The note shall be payable in equal monthly installments of principal and interest amortized over thirty (30) years. The first monthly installment shall be due thirty (30) days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the thirtieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property or contributions of the owners of the property at the time the final payment is due. Unless modified herein tax and insurance escrows, if any, will continue to be paid pursuant to the terms of the Note and Deed of Trust.

3. The note of the Class 12 creditor shall continue to be secured by its first position deed

17

of trust on the property but the note and any obligation due the Class 12 creditor, which is secured by the above deed of trust, shall be non-recourse to the Debtors. Any security for payment of the allowed claim which Chase had at the petition date other than the deed of trust above described which encumbers the property Chase shall retain post-confirmation.

4. The Debtors and the Class 12 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

5.13    Class 13 - Second Lien Claim of Business Development Finance Corporation ("BDFC")

This class consists of the allowed second lien claim of BDFC to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 7371 E. Placita Del Animo, Tucson, AZ 85715. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by BDFC in the amount of $243,430.17. The Debtors believe the claim is wholly unsecured.

B.    Impairment: Class 13 is impaired.

C.    Treatment: The Class 13 claimant, which holds a second position lien on the real property, is believed to be wholly unsecured. The Class 13 creditor have its lien released upon Court's order confirming debtor's plan of reorganization. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

5.14    Class 14  - Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo")

This class consists of the allowed first lien claim of Wells Fargo to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 4110 E. Spring Street Units 1, 2 & 3, Tucson, AZ 85712.  This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Wells Fargo in the amount of $744,849.05.

B.    Impairment: Class 14 is impaired.

C.    Treatment: The Class 14 claimant has received payment in full for the Class 14 claim pursuant to the sale order signed on November 6, 2013, DE 94. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

18

5.15    Class 15 - Second Lien Claim of Business Development Finance Corporation ("BDFC")

This class consists of the second lien claim of BDFC to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 4110 E. Spring Street Units 1, 2 & 3, Tucson, AZ 85712.  This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by BDFC in the amount of $243,430.17.

B.    Impairment: Class 15 is impaired.

C.    Treatment: The Class 15 claimant has received payment in full for the Class 15 claim pursuant to the sale order signed on November 6, 2013, DE 94. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

5.16    Class 16 - Third Lien Claim of Business Development Finance Corporation ("BDFC")

This class consists of the third lien claim of BDFC to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 4110 E. Spring Street Units 1, 2 & 3, Tucson, AZ 85712.  This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by BDFC in the amount of $142,698.77.

B.    Impairment: Class 16 is impaired.

C.    Treatment: The Class 16 claimant has received payment in full for the Class 16 claim pursuant to the sale order signed on November 6, 2013, DE 94. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

5.17    Class 17 - Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo")

This class consists of the allowed first lien claim of Wells Fargo to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 2785 E. Calle De Romy, Tucson, AZ 85712.  This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Wells Fargo in the amount of $744,849.05.

B.    Impairment: Class 17 is impaired.

C.    Treatment: The Class 17 claimant has received payment in full for the Class 17 claim pursuant to the sale order signed on November 6, 2013, DE 94. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

19

5.18    Class 18 - Second Lien Claim of Business Development Finance Corporation ("BDFC")

This class consists of the second lien claim of BDFC to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 2785 E. Calle De Romy, Tucson, AZ 85712. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by BDFC in the amount of $243,430.17.

B.    Impairment: Class 18 is impaired.

C.    Treatment: The Class 18 claimant has received payment in full for the Class 18 claim pursuant to the sale order signed on November 6, 2013, DE 94. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

5.19    Class 19 - Third Lien Claim of Business Development Finance Corporation ("BDFC")

This class consists of the third lien claim of BDFC to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 2785 E. Calle De Romy, Tucson, AZ 85712.  This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by BDFC in the amount of $142,698.77.

B.    Impairment: Class 19 is impaired.

C.    Treatment: The Class 19 claimant has received payment in full for the Class 19 claim pursuant to the sale order signed on November 6, 2013, DE 94. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

5.20    Class 20 - Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo")

This class consists of the allowed first lien claim of Wells Fargo to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 4014, 4024, 4034 E. Pima Street, Tucson, AZ 85712. This claim is evidenced by a promissory note and deed of trust. Debtors are aware of a Proof of Claim filed by Wells Fargo in the amount of $451,723.08.

B.    Impairment: Class 20 is impaired.

C.    Treatment: The Class 20 claimant has received payment in full for the Class 20 claim pursuant to the sale order signed on November 6, 2013, DE 94. Any deficiency amount shall be treated as a Class 21 unsecured claim and paid on a pro-rata basis from Debtors' disposable income.

20

1     <u>5.21 Class 21 - Unsecured Deficiency Claims and Unsecured Claims.</u>

2         A.    Classification: Class 21 consists of all unsecured deficiency claims and

3 unsecured claims against the debtor. <u>Debtors estimated unsecured claims in the amount of $39,553.09,</u>

4 <u>which does not include any deficiency amounts for secured creditors</u>

5         B.    Impairment: Class 21 is impaired.

6         C.    Treatment: All allowed and approved claims under this Class shall be paid the

7 sum of $150.00 on a quarterly basis, *pro rata*, from Debtors' disposable income, to be paid on the last

8 day of each quarter, beginning with the quarter ending after the Effective Date and anticipated to be

9 March 31, 2014, and continuing each quarter thereinafter for five years. Any liens held by the Class 21

10 creditors shall be null and void and removed as of the Effective Date.

11     <u>5.22 Class 22 - Contingent, Unliquidated and Disputed Claims.</u>

12         A.    Classification: Class 22 consists of all contingent, unliquidated and disputed

13 claims.

14         B.    Impairment: Class 22 is impaired.

15         C.    Treatment: Class 22 creditors shall receive no distribution under the Plan.

16     <u>5.23 Class 23 - Equity Interest.</u>

17         A.    Classification: Class 23 consists of the interests of the Debtors.

18         B.    Impairment: Class 23 is not impaired.

19         C.    Treatment: Debtors shall retain all of their legal and equitable interest in exempt

20 and non-exempt assets of this estate, as provided in the plan.

21

22                                         **VI. DISPUTED CLAIMS**

23     Debtors reserve the right to verify and object to any proof of claim. Payment of disputed claims

24 shall be made only after agreement has been reached between the Debtors and the Creditor or upon the

25 order of the Court. Any and all objections to proofs of claim will be filed within ninety (90) days of the

26 Effective Date of this plan or will be waived.

27

28

## VII. EXECUTORY CONTRACTS

Debtors have a lease with tenants, Debtors are assuming the existing lease in which payments are current**.**

## VIII. DOMESTIC SUPPORT OBLIGATIONS

As reflected in the schedules filed by the Debtors, there are no domestic support orders against the Debtors.

## IX. MEANS OF EXECUTION/PROJECTION

The Debtors will provide for payment of all timely filed and allowed claims over 60 months. The Debtors shall make payments in the sum of $150.00 per quarter to the Class 21 unsecured creditors, which shall be disbursed as set forth in the Plan  The source of the funds shall come from the Debtors' earned post-petition income and possibly from the refinancing or sale of property of the Debtors. *See 11 U.S.C. §1123(a)(8).*

The 2005 BAPCPA amendments to the Bankruptcy Code added, among other things, section 1129(a)(15). This section requires that upon the objection of an unsecured creditor to the Debtors' plan, the Debtors must either (A) pay the claim in full, or, (B) commit their disposable income to the plan payments for a minimum of 5 years, as determined by §1325(b)(2).  Although Debtors believe that projected disposable income is committed to the plan under the current projections, upon an objection to plan confirmation, Debtors will provide a schedule reflecting that projected disposable income has been committed to plan payments.

The Debtor reserves the right to accelerate payment under the Plan from financing obtained from third party financing, although currently Debtor has no plans or ability  to do so.  Debtor believes that by virtue of Confirmation of the Plan, they will have the ability to pay all allowed and approved claims pursuant to the Plan of Reorganization. The unsecured creditors will be paid a total of $3,000.00 under the Plan of Reorganization.

## X. QUARTERLY FEES AND REPORTS

Debtors shall continue to pay quarterly fees to the U.S. Trustee System until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding.  Debtor shall

22

continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of Reorganization and/or the end of the calendar quarter in which the Plan was confirmed.  At such time, Debtor shall cease filing monthly operating reports and shall begin filing quarterly post confirmation reports.  These quarterly reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding.

## XI. IMPLEMENTATION AND CONSUMMATION OF PLAN

The terms of the Plan subsequent to confirmation shall bind the Debtors, any entity acquiring property under the Plan, and any creditor or claimant, whether or not such creditor or claimant has accepted the Plan. All property of the estate shall vest in the Debtors and shall be free from attachment, levy, or garnishment of execution by creditors bound by the Plan.

ALL SECURED CREDITORS SHALL PROVIDE THE DEBTORS WITHIN 60 DAYS OF THE EFFECTIVE DATE, A NEW PAYMENT BOOK REFLECTING AMOUNT OF MODIFIED PAYMENTS, IF ANY AND/OR MONTHLY STATEMENTS REFLECTING THE NEW MONTHLY PAYMENTS AMOUNTS DUE AS SET FORTH UNDER THE TERMS OF THE CONFIRMED PLAN OF REORGANIZATION.

It shall be the obligation of each creditor participating under the Plan to keep the Debtors advised of its current mailing address.  In the event any payment tendered to creditors is mailed, postage prepaid, (1) to the address specified in the Debtors' schedules and statement, (2) to the address specified in any proof of claim filed by creditor or claimant here or (3) to the address provided by any such creditor or claimant for purposes of distribution, and if subsequently the Post Office returns such distribution due to a lack or insufficiency of address or forwarding address, the Debtors shall retain such distribution for a period of six months.  Thereafter, the distribution shall revert to the Debtors without further Order from the Court and free and clear of any distributions to any creditor for whom a distribution has been returned by the Post Office. The Debtors reserve the right to modify the Plan in accordance with §1127 of the Bankruptcy Code. The Plan may be modified prior to confirmation provided that the plan still complies with §1122 and §1123 of the Bankruptcy Code. The Plan may be modified subsequent to

23

confirmation and before substantial consummation of the Plan under such circumstances as may warrant such under §1127 of the Bankruptcy Code. Any holder of a claim or interest that has previously accepted or rejected a confirmed Plan, shall be deemed to have accepted or rejected any subsequently modified Plan unless the holder of such claim or interest changes its acceptance or rejection of the Plan within the time fixed by the Court.

## XII. DEFAULT

The Debtors' failure to make any payment due under the Plan within sixty (60) days after demand for payment after its due date shall constitute a default unless the Debtors and the affected creditor agree to delayed payment.

Upon default, creditors may pursue any remedy provided by the state or federal law, including foreclosing any security interest, suing on any promissory note issued or continued in effect under the Plan.

## XIII. RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objection to claims. The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of determining the allowability of any other claimed administrative expenses. The Court will also retain jurisdiction for the purpose of establishing bar dates and making a determination with respect to all disputed claims. Finally, the Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan and to implement and enforce the provisions of the Plan. Notwithstanding anything to the contrary contained herein, the Debtors shall not be bound by estoppel, the principles of *res judicata* or collateral estoppel with respect to any term or provision contained herein in the event the Plan is not confirmed.

///

///

///

///

24

1

2      The Court may enter a Final Decree and retain jurisdiction over this case to reopen the case to

3  provide relief including the entering of a Discharge Order.

4          RESPECTFULLY SUBMITTED:      December 24, 2013.

5
                                        LAW OFFICES OF
6                                       ERIC SLOCUM SPARKS, P.C.

7
                                        /s/ Sparks AZBAR #11726
8                                       Eric Slocum Sparks
                                        Attorney for Debtor
9  COPIES of the foregoing
   mailed/delivered/faxed
10  December 24, 2013 to:

11  UNITED STATES TRUSTEE
   230 N. First Ave. #204
12  Phoenix, Arizona 85003

13  Christopher J Pattock
   Office of the United States Trustee
14  230 N. First Avenue Suite 204
   Phoenix, AZ 85003-1706
15
   Wade M. Burgeson
16  Engelman Berger, P.C.
   3636 North Central Avenue, Suite 700
17  Phoenix, AZ 85012

18
   Marian Garza
19  Bankruptcy Servicer for Compass Bank
   Ascension Capital Group
20  P.O Box 201347
   Arlington, TX 76006
21
   Leonard J. McDonald
22  Tiffany & Bosco, P.A.
   2525 E. Camelback Rd #300
23  Phoenix, AZ 85016

24  Grant Winston
   David W. Krula
25  Pima County Attorney
   Civil Division
26  32 N. Stone, Ave Suite 2100
   Tucson, AZ 85701
27
   Udall Law Firm, LLP
28

25

Thomas D. Laue
4801 E. Broadway Blvd, Suite 400
Tucson, AZ 85711

R. David Sobel
Altfeld & Battaile P.C.
250 N. Meyer Ave
Tucson, AZ 85701

Howard A. Chorost
Law Offices of Howard A. Chorost
21 E. Speedway Blvd
Tucson, AZ 85705

David J. Hindman
Mesh, Clark & Rothschild, P.C.
259 N. Meyer Avenue
Tucson, AZ 85701-1090

Jeffrey T. Brei
Brei Law Firm
4574 N. First Ave, Suite 150
Tucson, AZ 85718

/s/ A. Court-Sanchez